Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
office@mylarlaw.com

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESTATE OF MARION HERRERA<br><br>Plaintiff,<br><br>v.<br><br>WEBER COUNTY and TERRY THOMPSON in his official capacity,<br><br>Defendants. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:17-cv-145<br><br>Judge Clark Waddoups<br>Magistrate Judge Brooke C. Wells |

Defendants, Weber County and Sheriff Terry Thompson in his official capacity, through their attorney Frank D. Mylar, respectfully submit this Motion for Summary Judgment and Memorandum in Support pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants' motion should be granted based upon the pleadings, affidavits, exhibits, and the following arguments:

**INTRODUCTION AND RELIEF SOUGHT**

It is always a tragic event in the life of a Jail when an inmate passes away and this is certainly no less the situation in this case. Tragedy, however, does not equate to liability. The Sheriff had implemented reasonable policies and the officers and other staff had adequate training

to make sure inmates received proper medical care. Jail staff followed that policy. Plaintiff[1] will no doubt say that the policy or training could have been better or something else could have been done, but that judgment is with 20/20 hindsight; a luxury Defendants did not have prior to Marion Herrera's death. Plaintiff cannot show any Defendant was deliberately indifferent to Decedent's serious medical needs. Therefore, she did not suffer a constitutional violation and Plaintiff's suit should be dismissed.

**WHEREFORE:** All Plaintiff's claims should be dismissed with prejudice.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Former Sheriff Terry Thompson was employed by the Weber County Sheriff's Office for more than twenty-nine (29) years before his retirement in January 2019. (Thompson Decl. ¶ 2).

2. He never met Decedent Marion Herrera nor was he aware of any of her medical problems during any incarceration. Thompson never knew she was in the Jail during the alleged incidents. He was not aware of Marion Herrera nor did he have any conversations about her prior to her unfortunate death on May 22, 2016. (Thompson Decl. ¶ 4).

3. At the time of the alleged incident Thompson was the duly elected Sheriff of Weber County. He took office in January 2011 and stepped down from this position in January 2019. (Thompson Decl. ¶ 5).

4. As the Sheriff, Thompson worked with others officers such as his Lieutenants and the Jail Commander to develop policies. He was required to approve all policies for the Weber

---

[1] Decedent Marion Herrera's husband, Joe Herrera is serving as personal representative of Decedent's estate, and is Plaintiff in this matter. (Compl. ¶ 10, Doc. No. 2 at 3).

County Sheriff's Office, including matters relating to management and administration over the Jail. (Thompson Decl. ¶ 6).

5. As Sheriff, he was the top administrator. It was his responsibility to oversee the general activities of the Sheriff's Office which included: patrol enforcement operations with contractual obligations to eight cities, all jail operations in multiple facilities, court bailiff and security operations in multiple locations, civil process service, search and rescue, emergency management, community relations, and much more. He did not get involved in the daily supervision of inmates or generally have personal knowledge of them. (Thompson Decl. ¶ 7).

6. Further, as the Sheriff, Thompson was the sole and final policymaker for Weber County regarding the management and administration of the Jail and he signed and approved all Jail policies. The Jail constituted just a portion of his overall responsibilities. (Thompson Decl. ¶ 8).

7. Thompson's involvement in the Jail was managed by his Chief Deputy/Jail Commander. The Jail Commander updated him on policy and training as needed and, to his knowledge, the Jail was being appropriately managed by the Jail Commander and his Lieutenants. (Thompson Decl. ¶ 9).

8. All officers who worked in the Weber County Jail were certified as Corrections Officers by the Utah State Peace Officer Standards and Training Division (POST). They must complete an extensive 12-week training program at the POST Academy. POST classes include information about how to ensure inmate's medical needs are addressed. All deputies on duty from May 18-22, 2016 were POST certified Corrections Officers in good standing. (Thompson Decl. ¶ 10).

9. It was the policy, practice, and part of the training of all Corrections Deputies and medical staff at Weber County Jail to consider inmate health, safety, and security the most important tasks and responsibilities of the facility. Although it is impossible to guarantee the health and safety of all inmates, Jail staff is trained to watch for potential problems and to constantly look for any hint of a safety or security problem. (Thompson Decl. ¶ 11).

10. The Jail had a comprehensive policy for booking inmates. This process was meant to ensure that all inmates were properly screened and any medical issues or problems that might arise were identified immediately upon arriving at the Jail. An exact copy of the Jail's Inmate Reception policy in effect in May 2016 are attached to the Declaration of Terry Thompson as Exhibit 1. (Thompson Decl. ¶ 12).

11. The Jail also had a policy to conduct visual safety checks on all inmates at least every 30 to 60 minutes. Inmates deemed to be at a heightened risk were to be monitored even more frequently. An exact copy of these policies in effect in May 2016 are attached to Terry Thompson's Declaration as Exhibit 2. (Thompson Decl. ¶ 13).

12. Similarly, it was always the policy of the Jail to provide adequate medical care to all inmates. The Jail had passed all relevant inspections, including those for federal detainees. Sheriff Thompson was not aware of circumstances that would cause him to believe there was a need for more or better policies, procedures, or training to eliminate the risk of providing constitutionally deficient medical services of any kind in the Jail. (Thompson Decl. ¶ 14).

13. Weber County Jail contracted with a physician to provide all medical services to inmates. The physician is solely in charge of supervising the medical needs of all Jail inmates. An

exact copy of this medical policy in effect in May 2016 is attached to Thompson's Declaration as Exhibit 3. (Thompson Decl. ¶ 15).

14. It was the policy, practice, and part of the training of all correctional deputies at Weber County Jail to provide access to qualified health care professionals and provide appropriate treatment to inmates as needed. It was also the policy of Weber County Correctional facility that a medical screening be performed on all inmates upon arrival at the booking area to ensure that existing, emergent, and urgent health care or mental health needs were identified, risks were assessed, and inmates with contagious and communicable diseases were properly classified and housed for their health and the health of the general population. (Thompson Decl. ¶ 16).

15. It was also the policy, practice, and part of the training of all correctional deputies at Weber County Correctional Facility to provide access to proper medical care to inmates who suffer from drug or alcohol overdose or withdrawal. To lessen the risk of a life-threatening medical emergency and to promote the safety and security of all persons in the facility, staff were to respond promptly to medical symptoms presented by inmates. (Thompson Decl. ¶ 17).

16. To Thompson's knowledge there were no issues or problems with the medical care provided to inmates at the Weber County Jail and he believed all inmates were receiving adequate medical care, nor was he aware of any defects in training. (Thompson Decl. ¶ 18).

17. Marion Herrera received prompt medical care upon being booked into the Jail and her status was being monitored by medical professionals during her incarceration. (Thompson Decl. ¶ 19).

18. This is confirmed by relevant documents from Marion Herrera's Jail files attached to Thompson's Declaration as follows:

    Exhibit 4 – Incident Reports authored after Ms. Herrera's death;

    Exhibit 5 – Intake Screening Form of Marion Herrera;

    Exhibit 6 – Housing Assignment of Marion Herrera;

    Exhibit 7 – Medical Consent Form of Marion Herrera;

    Exhibit 8 – Medical Intake Screening Form of Marion Herrera;

    Exhibit 9 – Medical Records of Marion Herrera;

    Exhibit 10 – Observation Notes of Marion Herrera. (Thompson Decl. ¶ 20).

19. While Ms. Herrera's death was tragic, it occurred naturally from medical complications that could not be prevented and was not caused by any actions or inactions at the Jail. (Thompson Decl. ¶ 22).

## ARGUMENT

### I. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Rule 56(e) of the Federal Rules of Civil Procedure requires a party opposing a supported motion for summary judgment to submit affidavits and admissible evidence showing a dispute of material fact on every essential element of a plaintiff's claim which he will bear the burden at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Plaintiff cannot show a disputed issue of genuine fact with admissible evidence on every element of his claims and, therefore, Defendants' Motion for Summary Judgment should be granted.

### II. Plaintiff's claims against Defendants are not cognizable.

Plaintiff is suing Weber County and Sheriff Terry Thompson in his "official capacity." However, a suit against a government official in his official capacity is in reality a suit against the

entity. *See* Moss v. Kopp, 559 F.3d 1155, 1168 n. 13 (10th Cir. 2009) (*quoting* Kentucky v. Graham, 473 U.S. 159, 161, 165-66 (1978)). Therefore, the official capacity defendant is subsumed by Weber County, and this motion accordingly seeks to dismiss all Defendants, including the official capacity claims against Sheriff Thompson.

Plaintiff brings two causes of action against Defendants: Count I – Deliberate Indifference under the Eighth Amendment and/or the Fourteenth Amendment (Compl. ¶¶ 29-35, Doc. No. 2 at 5-6); and Count II – Failure to Train and/or Supervise under the Eighth Amendment and/or the Fourteenth Amendment. (Compl. ¶¶ 36-44, Doc. No. 2 at 6-7). However, these two claims can only be construed as one claim as it relates to the County and the Sheriff.

A governmental entity under 42 U.S.C. § 1983 may only be liable "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011) (*citing* Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978)). "But, under § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal citations omitted). A plaintiff must prove that "action pursuant to official municipal policy" caused their injury. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

Thus, to impose liability against Weber County, Plaintiff must show (1) a Constitutionally defective policy or custom, (2) that the final policymaker who implemented the policy or custom acted with "deliberate indifference" to the constitutional rights of the plaintiff (or Decedent in this case), and (3) that the policy or custom "directly caused" and was the "moving force" behind an

underlying constitutional violation that caused constitutional harm to the plaintiff. *See generally* [Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997)](#).

In addition, a plaintiff must show an underlying constitutional violation by a county employee against Decedent before the County can be held liable under Section 1983. [Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993);](#) *see also* [City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)](#). Plaintiff cannot show that any Weber County employee was deliberately indifferent to Decedent's serious medical needs, and therefore, cannot show any underlying constitutional violation. Decedent received medical care the entire time she was incarcerated, and nothing in the record shows anything approaching deliberate indifference. (*See generally* Exhibit 4-10).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor [in this case the Sheriff as the final policymaker for the Jail] disregarded a known or obvious consequence of his action." [Brown, 520 U.S. at 410](#). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." [*Id*. at 406-07](#).

Since Weber County is a governmental entity that can only act through its final policymaker, liability under 42 U.S.C. § 1983 is far more difficult to prove. *See* [Milligan-Hitt v. Bd. of Trs. of Sheridan Cty. Sch. Dist. No. 2, 523 F.3d 1219 (10th Cir. 2008)](#). Even if disputes of material facts exist as to individual employee conduct, Plaintiff still cannot meet the other burdensome requirements for County liability. "A [county] may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights."

8

*Jenkins v. Wood,* 81 F.3d 988, 993 (10th Cir. 1996) (*quoting Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)).

Only officials who have "final policymaking authority" may be subject to § 1983 supervisory liability. *Pembaur v. Cincinnati,* 475 U.S. 469, 482-483 (1986). Persistent practices may amount to policy within a municipality, but they must be "so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 60 (2011). In limited circumstances a failure to train can give rise to a § 1983 claim. *Id.* at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* This failure to train must at least amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal citations and quotations omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.

During the relevant time in 2016, Sheriff Thompson was the final policymaker regarding Jail policy issues for the County (although not for hiring and firing decisions) in that he was charged with keeping the Jail within his county. *See* Utah Code Ann. §17-22-4(1); *see also Morro v. City of Birmingham,* 117 F.3d 508, 510 (11th Cir. 1997). Plaintiff cannot identify a constitutionally defective policy that the Sheriff implemented that directly caused Decedent's alleged constitutional injury, and there is no evidence that Sheriff Thompson acted with "deliberate indifference" to the constitutional rights of Decedent in implementing such a policy. Failure of the Plaintiff to prove any one of the three elements described above requires dismissal with prejudice

9

of all claims against the County, even if the Court could find that a Weber County employee violated Decedent's rights.

### A. Plaintiff fails to identify a constitutionally-defective County policy.

Plaintiff fails to allege in the complaint a specific policy or training that was "constitutionally defective." It is not sufficient for Plaintiff to vaguely claim that the policy was deficient in some way if he cannot prove it was "constitutionally" deficient. Jails are not required to have perfect or even good policies, rather they cannot be so constitutionally deficient that they directly caused Decedent to be deprived of her constitutional rights. Without the identification of a specific policy, Plaintiff fails to meet the first prong of *Brown* and all claims against the County must be dismissed on this basis alone. *Brown*, 520 U.S. at 403-404. However, there is no requirement to train or implement policies for rare or unforeseen events. *Walker v. City of New York*, 974 F.2d 293, 297 (2nd Cir. 1992).

It was the policy of the Jail to consider inmate health, safety, and security the most important tasks and responsibilities of the facility. (Thompson Decl. ¶ 11). This was achieved by identifying medical issues during booking and performing regular visual safety checks of inmates by line officers. (Thompson Decl. ¶¶ 12-13). The Jail had always passed all relevant medical inspections, and the Sheriff was not aware of anything that would indicate that the Jail's medical procedures were deficient in any way. (Thompson Decl. ¶ 14). The Jail had a contracted physician who provided all medical services to inmates, and the Sheriff believed all inmates were receiving adequate medical care. (Thompson Decl. ¶¶ 15-18). Plaintiff cannot show that there is any defect in any of these policies, and his claims must be dismissed for this reason alone.

### B. The final policymaker did not act with "deliberate indifference."

Second, Plaintiff fails to allege in his pleadings any wrongful acts of the final policymaker, Sheriff Thompson, that could support a claim that he acted with deliberate indifference to Decedent's constitutional rights in implementing an unconstitutional policy or training. There is no evidence he was aware of any deficiencies prior to Decedent's death.

An official is not responsible to take action to protect against an unknown risk. *See generally Farmer v. Brennan*, 511 U.S. 825, 847 (1994). In addition, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Moreover, officials who know of a substantial risk are free from liability if they responded reasonably to the risk even though harm was not averted. *Id.* at 844.

Based upon the undisputed material facts, Sheriff Thompson never had knowledge of any defects in the Jail medical policies or in how they were being followed or implemented, nor was he aware of any defects in training. (Thompson Decl. ¶ 18). The failure to alleviate a significant risk that was not perceived is insufficient to show liability under § 1983. *Farmer*, 511 U.S. at 838. Therefore, Plaintiff cannot show the County's final policymaker acted with deliberate indifference, and for this reason alone Plaintiff's claims must be dismissed.

### C. Plaintiff cannot show a County policy "directly caused" Decedent's harm.

It is undisputed that Sheriff Thompson was not personally involved in monitoring Decedent or that he in anyway authorized the alleged misconduct. (Thompson Decl. ¶ 4). Therefore, the County and the Sheriff cannot be held liable based upon the conduct of any particular employee. However, even if Plaintiff could identify a policy and that the Sheriff acted with deliberate

11

indifference to Decedent's constitutional rights, he would still have to show "a direct causal link" between an official County policy and the constitutional violation to show county liability under 42 U.S.C. § 1983. *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the [County] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Moreover, *Brown* ruled that more rigorous standards of causation must be employed when a plaintiff claims injury resulted from the acts of a municipal employee by stating, "rigorous standards of culpability and causation must be applied to ensure that the municipality [or county in this case] is not held liable solely for the actions of its employee." *Id.* at 405. *Brown* further states that claims against a governmental entity which do not involve a claim that the entity directed or authorized the deprivation of federal rights, "present much more difficult problems of proof." *Id*. at 406. Plaintiff cannot show a direct causal link in this case.

Like the plaintiff in *Brown*, Plaintiff seeks to hold the County liable for alleged wrongful acts of its employees even though the County's final policymaker had no personal involvement in the incidents and did not authorize the misconduct. However, in *Brown*, the parties knew that an employee caused a constitutional deprivation. The record in this case shows Decedent received proper medical care and no individual employee violated Decedent's constitutional rights. (*See generally* Exhibits 4-10).

To hold the County liable, Plaintiff cannot show merely a defect in a policy, but must show that a constitutionally defective policy "directly caused" the injury and that the Sheriff made a "conscious choice among various alternatives to implement a policy or training which would and did cause the constitutional deprivation. *See generally City of Oklahoma v. Tuttle*, 471 U.S. 808,

824 (1985). Plaintiff has no evidence of a "conscious choice" by the Sheriff to implement a defective policy or training and that the policy or training directly caused a constitutional violation. It is unclear that Decedent would not have died even if different policies were implemented. However, that is not the claim here against the County; rather Plaintiff must show that the County policies directly caused Decedent to be deprived of her constitutional rights.

Since Plaintiff failed to articulate a specific constitutional defect in policy or training, this Court is left to guess or surmise what the alleged defect could be let alone determine if the policy was the "direct cause" of constitutional harm. It is Plaintiff's burden to specifically identify a defect in policy and training and then show that the constitutional violation was directly caused by the specific "constitutional" defect. Plaintiff has not done this and cannot do this. Therefore, Plaintiff cannot show a direct causal link to Decedent's alleged injury. For all these reasons, Plaintiff cannot show there is any basis for liability against Weber County and all claims against it and the Sheriff must be dismissed.

**WHEREFORE:** All Plaintiff's claims should be dismissed with prejudice.

Dated this 15th day of March, 2019.

*/s/ Frank D. Mylar*

Frank D. Mylar
Attorney for Defendants